# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:09-CV-531-MOC-DCK

| | |
|---|---|
| STEVIE DWAYNE MCFALLS, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| MICHAEL ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion For Summary Judgment" (Document No. 11) and Defendant's "Motion For Summary Judgment" (Document No. 14). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that "Plaintiff's Motion For Summary Judgment" be denied; that Defendant's "Motion For Summary Judgment" be granted; and that the Commissioner's decision be affirmed.

## I. BACKGROUND

Plaintiff Stevie Dwayne McFalls ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. (Document No. 1). On June 23, 2004, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq.* and for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383 *et seq.*, alleging an inability to work due to a disabling condition beginning September 15, 1998. (Transcript

of the Record of Proceedings ("Tr.") 24). The current matter arises from the second of three such applications filed by Plaintiff. (Document No. 11-1, p.1).

Plaintiff's first application alleging disability beginning September 15, 1998, was filed on November 23, 1999.[1] (Document No. 11-1, p.1; Tr. 58). That first application was denied by an Administrative Law Judge on January 22, 2002; and the Appeals Council subsequently denied review. Id. "On June 23, 2004, Mr. McFalls filed his second application for disability with SSA which gave rise to the matter before the Court." (Document No. 11-1, p.5). Although Plaintiff's second application originally alleged the same disability onset date as the first, September 15, 1998, he eventually amended the onset date to the same date as the filing – June 23, 2004. (Document No. 11-1, p.1; Tr. 1001). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's second application initially on September 23, 2004, and again after reconsideration on August 2, 2005. (Tr. 24).

Plaintiff later filed a third application for benefits **alleging that he became disabled on January 1, 2006**. (Document Nos. 11-1, p.2; 11-2). Plaintiff notes in his supporting memorandum that his third disability application was approved by the Social Security Administration ("SSA") on April 6, 2010. (Document No. 11-1, p.2). The SSA notice, attached as an exhibit to Plaintiff's brief, states that:

> You said that you became disabled on 01/01/2006. While you feel your condition was disabling on 01/01/2006, the evidence does not show your condition to be disabling until 02/17/2009. The **records show that your conditions became severe enough to be considered disabling as of 02/17/2009**. Prior to that time, you were considered able to perform your past work as a Yarn Sorter as performed in the general economy.

---

[1] Plaintiff later states that he "filed his first application for disability" on July 10, 2000. (Document No. 11-1, p.4; Tr. 62).

> Therefore, based on all of the medical and non-medical evidence, we
> have found 02/17/2009 as the date disability began.

(Document No. 11-2, p.1)(emphasis added). Plaintiff's pending motion does not explain why his first two applications alleged a disability onset date of September 15, 1998, later amended to June 23, 2004, while his third application alleged disability beginning on January 1, 2006.

Plaintiff filed a timely written request for a hearing regarding his second application for benefits on August 19, 2005. On December 10, 2007, Plaintiff appeared and testified at a hearing before Administrative Law Judge Clinton C. Hicks ("ALJ"). (Tr. 24). On March 14, 2008, the ALJ issued an unfavorable decision denying Plaintiff's claim. (Tr. 21-35). Plaintiff filed a request for review of the ALJ's decision on May 12, 2008, which was denied by the Appeals Council on October 19, 2009. (Tr. 10, 20). The March 14, 2008 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 10).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination regarding his second disability application was filed in this Court on December 17, 2009. (Document No. 1). "Plaintiff's Motion For Summary Judgment" (Document No. 11) and "Memorandum Supporting Plaintiff's Motion For Summary Judgment" (Document No. 11-1), were filed July 29, 2010; Defendant's "Motion For Summary Judgment" (Document No. 14) and "Memorandum In Support Of The Commissioner's Decision" (Document No. 15), were filed October 27, 2010; and "Plaintiff's Reply To Defendant's Motion For Summary Judgment" (Document No. 16) was filed on November 15, 2010. The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Max O. Cogburn, Jr. is appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between September 15, 1998, and the date of his decision.[2] To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ found that Plaintiff was not under a disability at any time from September 15, 1998, through the date of his decision, March 14, 2008. (Tr. 35).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

---

[2] Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) quoting 42 U.S.C. § 423(d)(1)(A).

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that the Plaintiff was <u>not</u> disabled.

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity after his alleged disability onset date. (Tr. 26). At the second step, the ALJ found that Plaintiff's Crohn's disease, pain and depression, were severe impairments. (Tr. 26).[3] At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 29).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity

> to perform light work with option to sit and/or stand at will. In addition, the claimant has non-exertional limitations. However, he is capable of remembering and understanding instructions, carrying out simple instructions, asking simple questions, requesting assistance and being aware of ordinary hazards.

(Tr. 29-30). In making his finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," . . . as well as opinion evidence. (Tr. 30). The ALJ also considered Plaintiff's testimony regarding his impairments' severity and resulting functional limitations, but deemed his testimony "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (Tr. 30-31).

---

[3] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See <u>Bowen v. Yuckert</u>, 482 U.S. 137 (1987).

At the fourth step, the ALJ found that Plaintiff could not perform his past relevant work. (Tr. 34). At the fifth and final step, the ALJ concluded based on the testimony of a vocational expert and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 34-35). Specifically, the vocational expert testified that according to the factors given by the ALJ, occupations claimant could perform included light cashier II; inspector and hand packager; and a nut and bolt assembler. (Tr. 35, 867-868). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between September 15, 1998, and the date of his decision, March 14, 2008. (Tr. 35).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ's step five finding is not supported by vocational expert testimony; (2) the ALJ did not properly evaluate certain medical opinion evidence; (3) the ALJ failed to properly consider other evidence; and (4) the Appeals Council improperly evaluated new and material evidence in its review. (Document No. 11-1). The undersigned will discuss each of these contentions in turn.

**A. Vocational Expert Testimony**

In his first assignment of error, Plaintiff argues that the VE's testimony does not support the ALJ's decision. (Document No. 11, p.8). Specifically, Plaintiff contends that ALJ's hypothetical to the VE did not match the ALJ's own findings, and that it improperly "lists only non-exertional <u>capabilities</u>, not non-exertional <u>limitations</u>." (Document No. 11-1, pp.8-9). Plaintiff also contends that the ALJ erred by failing to specify the claimant's non-exertional limitations in his RFC finding. (Document No. 11-1, p.10).

In response, Defendant argues that the ALJ's

> hypothetical matched the ALJ's RFC finding in every aspect except that it had indicated an ability to perform medium level work rather than light level work. The VE, however, indicated that medium level work could not be performed with the limitation in standing and so the hypothetical person could only perform light work with the additional limitations thereby reducing the hypothetical to work that matched the final RFC finding.

(Document No. 15, pp.8-9 (citing Tr. 1064-1064)). Defendant also persuasively argues that the ALJ's RFC finding took into account non-exertional limitations in mental work-related activities. (Document No. 15, p.9). Both the RFC and the hypothetical describe a person "who can understand and remember instructions; who can carry out simple instructions; who's able to ask simple questions; who's able to ask simple question and request assistance; who is capable of being aware of ordinary hazards." (Tr. 1063). Defendant contends that the limitations included in the hypothetical were drawn from forms completed by Dr. Anton, Mr. Bertolette, and Dr. Gihwala. (Document No. 15, p.10).

The undersigned is satisfied that substantial evidence supports the VE's testimony and the ALJ's reliance on that testimony.

## B. Medical Opinion Evidence

Next, Plaintiff alleges that the ALJ failed to properly consider certain medical opinion evidence. (Document No. 11-1, p.12).

1. <u>Charles Agunobi, M.D.</u>

In most pertinent part, Plaintiff contends that the ALJ erred in failing "to consider Dr. Agunobi's opinion that Mr. McFalls' pain was not so well controlled with medications that he could stay at a workstation and perform a task for an entire workday." (Document No. 11-1, p.15).

8

Plaintiff argues that this is a treating source medical opinion and that as such the ALJ must provide specific reasons for the weight given this opinion. (Document No. 11-1, pp.15-16 (citing SSR96-2p)). Plaintiff concludes that the ALJ completely failed to evaluate this physician's opinion. Id.

In response, Defendant asserts that "Dr. Agunobi's opinion that Plaintiff could not work for eight hours due to pain is not supported by the record, and is inconsistent with the evidence and other medical opinions." However, Defendant's argument on this point is conclusory and does not specifically identify any contradictory medical opinions or inconsistency with the evidence, or otherwise explain the ALJ's evaluation, or lack thereof, of Dr. Agunobi's opinion regarding Plaintiff's pain.

> Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight. The ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence....

Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (citations omitted).

Although Plaintiff suggests that the ALJ failed to consider Dr. Agunobi's opinion regarding Plaintiff's pain, the undersigned respectfully disagrees. The decision first shows that the ALJ acknowledged the opinion of Dr. Agunobi as Plaintiff's treating physician. (Tr. 31). Then, the ALJ describes reviewing Dr. Agunobi's progress notes, specifically relating to Plaintiff's complaint of chronic pain and tenderness, and concluding that Dr. Agunobi's opinion "is not substantiated by his own medical evidence and is not consistent with other medical evidence of record." (Tr. 32). Based on this evaluation of the evidence the ALJ assigned less weight to Dr. Agunobi's opinion. (Tr. 32-33).

Plaintiff's claim that the ALJ failed to consider the medical opinion of Dr. Agunobi is without merit.

   2. Barry L. Bertolette, NP

Plaintiff appears to contend that the ALJ erred by making "no mention" in the decision of two out of three opinion statement forms submitted by Mr. Bertolette on July 23, 2007. (Document No. 11-1, p.16). Later, Plaintiff asserts that "[t]he ALJ did recite a number of Mr. Bertolette's opinions" but "he did not explain what weight he gave them." Plaintiff makes this contention even though Mr. Bertolette only treated Plaintiff twice, and Plaintiff acknowledges that "[a]s a nurse practitioner, Mr. Bertolette is a medical source who is not an 'acceptable medical source.'" Id.

The undersigned finds that the ALJ decision specifically references at least one of the opinion statement forms provided by Mr. Bertolette on July 23, 2007. (Tr. 32; Tr. 821-824). If the ALJ erred by failing to mention two pages of a record that is over a thousand pages long, regarding the opinion of a source the Plaintiff describes as "not an 'acceptable medical source,'" or by failing to explain the weight given such a source, the undersigned finds such error to be harmless. As such, Plaintiff's argument here is without merit.

   3. Elizabeth Anton, PsyD

Next, Plaintiff suggests that the ALJ erred by failing to mention the opinions of Dr. Anton, or explaining the weight given such opinions. (Document No. 11-1, p.17). Defendant argues that a proper review of the record reveals that the ALJ's ultimate RFC finding with regard to Plaintiff's mental abilities was actually the same as Dr. Anton's functional capacity assessment. (Document No. 15, p.7 (citing Tr. 413)).

The undersigned thus finds that any error by the ALJ in failing to specifically mention Dr. Anton's opinion, or the weight given to Dr. Anton's opinion, is harmless.

**C. Consideration of Other Evidence**

Third, Plaintiff argues that the ALJ erred by failing to properly consider other evidence. (Document No. 11-1, p.17). In particular, Plaintiff contends that the ALJ: (1) failed to consider all relevant medical evidence; (2) failed to make findings on issues properly before him; and (3) made findings that are not supported by substantial evidence. (Document No. 11-1, pp.17-19).

Although the ALJ did not discuss or list every single medical record that was received, it does appear that he thoroughly reviewed all the evidence. The ALJ's summary of the various medical reports and opinions, as well as Plaintiff's complaints, supports such a conclusion. (Tr. 26-34). Moreover, the decision and its citations to the record indicate that the ALJ did rely on substantial evidence in making his findings and in ultimately reaching the conclusion that Plaintiff was not disabled between September 15, 1998 and March 14, 2008. (Tr.35).

**D. Appeals Council Review**

Finally, Plaintiff argues that the Appeals Council improperly denied review. (Document No. 11-1, p.20; Tr. 10-12). Plaintiff asserts that the Appeals Council: (1) ignored harmful defects in the ALJ's decision; (2) erred in reviewing Plaintiff's date last insured; and (3) ignored new and material evidence. (Document No. 11-1, pp.20-25).

Plaintiff contends that the Appeals Council failed to properly address his concerns regarding the ALJ's attention and/or weight given to certain medical opinions. (Document No. 11-1, p. 20). This argument is essentially the same as the one addressed above, with the exception of a question

regarding Dr. Gihwala. Plaintiff argues that the Appeal Council's rationale for giving these opinions little weight is erroneous. (Document No. 11-1, p.21).

The undersigned does not find it necessary to review again the ALJ's consideration of Dr. Agunobi or Mr. Bertolette's opinions. As to Dr. Gihwala's opinion, the undersigned has reviewed the assessment prepared on May 27, 2008 and does not find that the Appeals Council erred in its conclusion that the "new" evidence was not contrary to the weight of the evidence in the record. (Tr. 873-876; Tr. 10-11). In short, the undersigned agrees with Defendant that the Appeals Council reasonably concluded that any new evidence submitted from the period prior to the ALJ's decision did not suggest functional abilities more limited than those assigned by the ALJ. (Tr. 11; Document No. 15, p.12). (Document No. 11-1, p.21).

Next, Plaintiff contends that the Appeals Council erred in reviewing Plaintiff's date last insured. The undersigned agrees with Defendant that this argument is immaterial here since the ALJ found that Plaintiff was not disabled between September 15, 1998 and March 14, 2008.

Plaintiff also argues that the Appeals Council ignored new and material evidence; however, Plaintiff also states that the "Appeals Council received this evidence and made it part of the record." (Document No. 11-1, p.21). After review of the "Notice Of Appeals Council Action" (Tr. 10-12) and the parties' briefs, the undersigned is not persuaded that the Appeals Council "ignored" or "erroneously discounted this evidence." To the contrary, the Appeals Council's notice indicates that it gave proper consideration to the materials submitted by Plaintiff.

## IV. CONCLUSION

Based on the foregoing, the undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence

supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).

In addition, the history of Plaintiff's applications for disability, as cited by Plaintiff, bolsters Defendant's position. Not only did the ALJ and Appeals Council in *this* matter reject Plaintiff's disability claims, but similar claims were rejected by an ALJ and Appeals Council prior to this action, *and* by the SSA following this action. (Document No. 11-1, pp.1-1). In the course of his applications, Plaintiff has amended his disability onset date three times; from September 15, 1998, to June 23, 2004, to January 1, 2006. (Document No. 11-1, p.1; Document No. 11-2). Ultimately, the SSA determined that Plaintiff was disabled as of February 17, 2009. (Document No. 11-2).

The undersigned does not find that Plaintiff has stated sufficient grounds to reverse or remand the ALJ's March 14, 2008 decision. As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: "Plaintiff's Motion For Summary Judgment" (Document No. 11) be **DENIED**; Defendant's "Motion For Summary Judgment" (Document No. 14) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of

same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Max O. Cogburn, Jr.

**IT IS SO RECOMMENDED**.

Signed: May 12, 2011

David C. Keesler
United States Magistrate Judge